**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEPH MESSINA, *et al.* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MASTERY CHARTER SCHOOL, *et al.* | : | NO. 20-915 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                         August 11, 2020

### I.   BACKGROUND

In this case, Joseph Messina ("Plaintiff") has sued Mastery Charter School, Central Office and Mastery Charter School, Thomas Campus ("Defendants" or "Mastery") because school officials at the Thomas Campus failed to protect his minor Caucasian son (who is also a plaintiff),[1] from physical, verbal and emotional abuse meted out by four of his son's fellow Afro-American students.[2]  The abuse included the bullies going to Plaintiff's home and spray-painting racial epithets on the home.  Despite Plaintiff and his son's complaints to school officials, Defendants did not protect his son from further abuse.  Eventually, Plaintiff transferred his son to a different school.[3]

In the complaint, Plaintiff raised a state-created danger claim, Comp. at [2]-[5], and other claims,[4] *id.* at [5]-[7], against Mastery, based upon the abuse his son received and the school officials' response towards him.  Defendants have moved to dismiss all asserted claims444.  Defs.' Mot. to Dismiss; Defs.' Br. in Support at 4-14.  Plaintiff, in response to Defendants' motion, only

---

[1] In order to distinguish between Plaintiff father and son, the court will refer to the father as "Plaintiff" and his son as "son".
[2] Although Plaintiff alleges that the abuse of his son started on February 21, 2018, Comp. at [2], he does not provide any other dates for the events he complains about.
[3] All of the factual allegations contained in this paragraph appear on unnumbered pages two and three of the complaint.
[4] The other claims were the son's Title VI and negligence claims, and Plaintiff's retaliation claim, based upon school officials' reaction to his complaints about the abuse his son was receiving.

addressed the dismissal of the state-created danger claim. Pls.' Br. in Support of Resp. ("Pl. Br.") at 2-6. Because Plaintiff failed to contest Defendants' motion to dismiss the other claims, they are dismissed. Finally, although Plaintiff's son is a sympathetic victim and Defendants' failure to protect him is reprehensible, governing legal precedent requires that the state-created danger claim be dismissed as well.

## II.     MOTION TO DISMISS STANDARD

As explained by the Third Circuit:

> For purposes of reviewing a motion to dismiss under Rule 12(b)(6), we are "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014) (quotation marks and citation omitted). However, we disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements. *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (citation omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

*Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016). The court must determine if Plaintiff's claims are facially plausible, *i.e.*, whether Plaintiff has pleaded sufficient facts to allow the court to draw the reasonable inference that the defendant is liable on the basis alleged. *Mammana v. Federal Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019) (citations omitted).

## III.    STATE-CREATED DANGER STANDARD

In this Circuit, a state-created danger claim requires the following four elements:

> (1) the harm ultimately caused was foreseeable and fairly direct;
> (2) a state actor acted with a degree of culpability that shocks the conscience;
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a

> member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006) (citations and quotations omitted). In most cases, as in this instance, the parties focus on the last factor,[5] *see Morrow v. Balaski*, 719 F.3d 160, 177 (3d Cir 2013) (*en banc),* which requires affirmative acts, not failures to act, by state officials.[6] *Id.* at 177-78; *Bright*, 443 F.3d at 282. Hence, the court will devote most of its attention to the last factor. However, one of Plaintiff's arguments concerns the second factor. In certain cases, where the state actor is in a pressurized environment and deliberation is not feasible, such as a high-speed police chase, intent to harm is required. *L.R. v. School Dist. of Philadelphia*, 836 F.3d 235, 246 (3d Cir. 2016). Yet, in most cases, where unhurried judgment is possible, to shock the court's conscience, a state actor must act with deliberate indifference. *Id.* Deliberate indifference has been defined as "'conscious disregard of a substantial risk of serious harm.'" *Id.* (quoting, *inter alia*, *Vargas v. City of Philadelphia*, 783 F.3d 962, 973-74 (3d Cir. 2015)).

## IV.   DISCUSSION

Plaintiff's allegations concerning what happened to his son are similar to what happened in *Morrow*. The facts in *Morrow* were the following:

> Brittany and Emily Morrow attended Blackhawk High School in Beaver County, Pennsylvania. Beginning in January 2008, they were subjected to a series of threats and physical assaults by Shaquana Anderson, a fellow student. Specifically, on January 5, 2008, Anderson threatened Brittany by phone and on a MySpace

---

[5] The parties do not focus their attention on the three other factors for state-created danger claims. However, one of Plaintiff's arguments concerns the conscience-shocking element, which the court will address. *See infra* Section IV.
[6] Oddly, Plaintiff has failed to sue or to identify, by name or title, any school official he or his son informed of the abuse.

3

> blog. Two days later, Anderson physically attacked Brittany in the school's lunch room. Pursuant to its "No Tolerance Policy," the school suspended both girls for three days. Brittany's mother also reported Anderson to the local police at the recommendation of Assistant Principal Balaski. As a result, Anderson was charged with simple assault, terroristic threats, and harassment. Nevertheless, Anderson continued to bully Brittany and Emily. In fact, shortly after she returned to school, Anderson again attacked Brittany by attempting to throw her down a set of stairs. During that incident, Anderson allegedly called Brittany a "cracker," told her that she was "retarded" and "had better learn to fight back," and asked "why don't you learn to talk right?"
> 
> On April 9, 2008, Anderson was placed on probation by the Court of Common Pleas of Beaver County, Juvenile Division, and ordered to have no contact with Brittany. Five months later, Anderson was adjudicated delinquent by a Juvenile Master of that court, and was again ordered to have no contact with Brittany. Copies of both of these "no-contact" orders were provided to the school and to Assistant Principal Balaski.
> 
> Despite the court's intervention, on September 12, 2008, Anderson boarded Brittany's school bus, even though that bus did not service Anderson's home route. Anderson threatened Brittany, and she elbowed Brittany in the throat at a school football game that evening. A few days later, Abbey Harris, Anderson's friend, struck Emily in the throat. These incidents were reported to school officials.
> 
> The Morrows subsequently met with school officials, but they responded by telling the Morrows that they could not guarantee Brittany and Emily's safety. Instead, rather than removing Anderson and her confederate from the school, school officials advised the Morrows to consider another school for their children. In October 2008, the Morrows enrolled their daughters in a different school.

*Morrow*, 719 F.3d at 164-65.

As in *Morrow*, Plaintiff's son was subjected to physical, verbal and emotional abuse at the hands of fellow students. As in *Morrow*, Plaintiff and his son complained to school officials about the abuse. As in *Morrow*, the school officials failed to protect Plaintiff's son and Plaintiff withdrew his son from Mastery to protect him. In *Morrow*, the court concluded that the Morrows could not satisfy the fourth part of the state-created danger test, because their allegations constituted inaction

4

by school officials, not affirmative acts. *Morrow*, 719 F.3d at 178. Regrettably, that is the legally correct result in this case as well.

To avoid this result, Plaintiff contends that the school officials' failure to discipline the students who abused his son or take steps to protect his son emboldened the abusive students and exposed his son to additional harm. Pl. Br. at 3. However, this contention is similar to an argument that failed in *Bright*. In that case, the decedent's father argued that a defendant's interaction with the killer and the defendant's failure to restrain the killer, despite having the authority to do so, caused the killer to believe that the defendant would not prevent future wrongful conduct, thereby increasing the danger to decedent. The court rejected that argument and concluded that the defendant's conduct *vis a vis* the killer was not an affirmative act. *Bright*, 443 F.3d at 284-85. *Bright* teaches that the school officials' conduct in this case was not an affirmative act.

Plaintiff further argues that Mastery officials assured him that they had control of the situation; however, when he learned that was not true, he went angrily to Mastery to complain about the ongoing abuse. Pl. Br. at 3-4.[7] Rather than assuage his anger, school officials called the police and accused Plaintiff of threatening them. *Id.* at 4. Plaintiff asserts that, by calling the police, school officials communicated to "the Mastery community" that no one should question school officials, because doing so would invoke "the wrath of the state." *Id.* Although this argument alleges the affirmative act of calling the police, it also implicates whether the school officials' action shocks the conscience.

Plaintiff's belligerence may have eliminated the school officials' ability to exercise "unhurried judgment." For that reason, it is possible that intent to harm is required. *See L.R.*, 836 F.3d at 246. If so, no reasonable person could seriously argue that calling the police in response

---

[7] This argument is not consistent with what is alleged in the complaint, which fails to allege that school officials told Plaintiff that they had his son's situation under control.

5

to **Plaintiff's** belligerence indicates the school officials' intent to harm Plaintiff's **son**.[8] If, instead, deliberate indifference is required, the claim fails because, contacting police clearly does not demonstrate the school officials' "conscious disregard of a substantial risk of serious harm [to Plaintiff's son]." *See L.R.*, 836 F.3d at 246. Rather, it demonstrates that school officials feared Plaintiff. Therefore, the school officials' decision to call the police in the face of Plaintiff's belligerence does not shock the conscience with respect to his son.

This court declines to allow Plaintiff to plead additional facts. Based on the scenario already presented and the current state of the law, there is no likelihood that he can properly plead a state-created danger claim. For example, if Plaintiff were to plead that school officials promised to protect his son,[9] but failed to take the necessary steps to do so, the affirmative act requirement still would not be satisfied. *See Bright*, 443 F.3d at 284 (holding that a police officer's failure to honor his promise to protect the decedent by arresting the killer – before the decedent was killed – did not constitute an affirmative act).

An implementing Order follows.

---

[8] In the complaint, these allegations are not linked to the son's state-created danger claim, which appears at unnumbered pages two through five. Instead, they are the basis for Plaintiff's retaliation claim. Comp. at [6].

[9] Although Plaintiff argues that school officials told him they had the situation under control, Pl. Br. at 3, which could be taken to imply that school officials promised to protect Plaintiff's son, Plaintiff never alleged this fact in the complaint. Instead, he alleged that school officials ignored or responded minimally to his complaints. *See* Comp. at [3], [7].